**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OKLAHOMA**
**TULSA DIVISION**

| | |
|---|---|
| 1) MATTHEW BRISTER, Individually and For Others Similarly Situated,<br>　　　　　　Plaintiff,<br><br>v.<br><br>1) UNIVERSAL FIELD SERVICES, INC.,<br>　　　　　　Defendant. | Case No. 20-cv-00141-CVE-FHM<br><br>**JURY TRIAL DEMANDED**<br><br>**COLLECTIVE ACTION PURSUANT TO 29 U.S.C. § 216(b)** |

## ORIGINAL COMPLAINT

### SUMMARY

1. Plaintiff Matthew Brister ("Brister") brings this lawsuit to recover unpaid overtime wages and other damages from Universal Field Services, Inc. ("UFS") under the Fair Labor Standards Act ("FLSA").

2. Brister worked for UFS as an Inspector.

3. Brister and the Day Rate Inspectors (as defined below) regularly worked for UFS in excess of forty (40) hours each week.

4. But UFS did not pay them overtime.

5. Instead of paying overtime as required by the FLSA, UFS improperly paid Brister and the Day Rate Inspectors a daily rate with no overtime compensation.

6. This collective action seeks to recover the unpaid overtime wages and other damages owed to these workers.

### JURISDICTION AND VENUE

7. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 216(b).

8. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because UFS is headquartered in this District.

## THE PARTIES

9. Brister worked for UFS from approximately September 2018 until December 2018 as a Utility Inspector.

10. Throughout his employment, UFS paid Brister a flat daily rate for each day worked regardless of the total hours worked in a workweek ("day rate pay plan").

11. Brister's consent to be a party plaintiff is attached as **Exhibit A.**

12. Brister brings this action on behalf of himself and all other similarly situated workers who were paid by UFS's day-rate system. UFS paid each of these workers a flat amount for each day worked and failed to pay them overtime for all hours that they worked in excess of 40 hours in a workweek in violation of the FLSA.

13. The class of similarly situated employees or putative class members sought to be certified is defined as follows:

> **All inspectors Universal Field Services, Inc. paid according to its day rate pay plan in the past three (3) years (the "Day Rate Inspectors").**

14. The identities of the Day Rate Inspectors can be readily ascertained from UFS's records.

15. Universal Field Services, Inc. is an Oklahoma For Profit Business Corporation and may be served with process by serving its registered agent: Johnson & Jones, P.C., 6120 South Yale Avenue, Suite 500, Tulsa, OK 74136.

## COVERAGE UNDER THE FLSA

16. At all times hereinafter mentioned, UFS was and is an employer within the meaning of the Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

17. At all times hereinafter mentioned, UFS was and is an enterprise within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

18. At all relevant times, UFS has been part of an enterprise engaged in commerce or in the production of goods for commerce within the meaning of section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1).

19. At all relevant times, UFS has, and has had, employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials (including tools, flashlights, smart phones/devices, badges, uniforms, computers, personal protection equipment, etc.) that have been moved in or produced for commerce.

20. In each of the past 3 years, UFS's annual gross volume of sales has well exceeded $1,000,000 for at least the past 3 years.

21. At all relevant times, Brister and the Day Rate Inspectors were engaged in commerce or in the production of goods for commerce.

22. UFS uniformly applied its policy of paying its Inspectors, including Brister, a day rate with no overtime compensation.

23. UFS applied this policy regardless of any alleged individualized factors such as job position, job duties/responsibilities, or geographic location.

24. By paying its Inspectors a day rate with no overtime compensation, UFS violated (and continues to violate) the FLSA's requirement that it pay employees at 1 and ½ times their regular rates for hours worked in excess of 40 in a workweek.

25. As a result of this policy, UFS and the Day Rate Inspectors do not receive overtime as required by the FLSA.

26. UFS's uniform compensation scheme of paying its Inspectors a day rate with no overtime compensation for weeks in which these workers work over 40 hours is, in of itself, a violation of the FLSA. 29 U.S.C. § 207(a) & (e).

## THE FACTS

27. UFS provides right of way acquisition services for government, pipeline, electric transmission, airport, transit, turnpike, and other infrastructure projects.

28. To complete its business objectives, it hires personnel (like Brister) to perform inspection work.

29. Many of these individuals worked for UFS on a day rate basis (without overtime pay).

30. These workers make up the proposed collective of Day Rate Inspectors.

31. While exact job titles and job duties may differ, these employees are subjected to the same or similar illegal pay practices for similar work.

32. Throughout his employment with UFS, UFS paid him on a day rate basis.

33. Brister and the Day Rate Inspectors work for UFS under its day rate pay scheme.

34. Brister and the Day Rate Inspectors do not receive a salary.

35. If Brister and the Day Rate Inspectors did not work, they did not get paid.

36. Brister and the Day Rate Inspectors receive a day rate.

37. Brister and the Day Rate Inspectors do not receive overtime pay.

38. This is despite the fact Brister and the Day Rate Inspectors often worker 10 or more hours a day, for 7 days a week, for weeks at a time.

39. For example, Brister received a day rate for each day he worked for UFS.

40. Although he typically worked 7 days a week, for 10 or more hours a day, he did not receive any overtime pay.

41. Brister and the Day Rate Inspectors received the day rate regardless of the number of hours they worked in a week, even when they worked more than 40 hours.

42. Brister and the Day Rate Inspectors are not employed on a salary basis.

43. Brister and the Day Rate Inspectors do not, and never have, received guaranteed weekly compensation from UFS irrespective of the day worked (i.e., the only compensation they receive is the day rate they are assigned for all hours worked in a single day or week).

44. Brister and the Day Rate Inspectors work in accordance with the schedule set by UFS and/or its clients.

45. Brister's work schedule is typical of the Day Rate Inspectors.

46. UFS controls Brister and the Day Rate Inspectors' pay.

47. Likewise, UFS and/or its clients control Brister and the Day Rate Inspectors' work.

48. UFS requires Brister and the Day Rate Inspectors to follow UFS and/or its clients' policies and procedures.

49. Brister and the Day Rate Inspectors' work must adhere to the quality standards put in place by UFS and/or its clients.

50. Brister and the Day Rate Inspectors are not required to possess any unique or specialized skillset (other than that maintained by all other workers in their respective positions) to perform their job duties.

51. As an Inspector, Brister was responsible for ensuring UFS's and/or its clients' projects were completed according to established guidelines, specifications, and restrictions.

52. All UFS's Day Rate Inspectors perform similar duties, inspecting projects, ensuring work is done according to established guidelines, specifications, and restrictions.

53. Brister and the Day Rate Inspectors provide inspection reports to UFS (and/or its clients') personnel.

54. At all relevant times, UFS and/or its clients maintained control over Brister and the Day Rate Inspectors via hiring, firing, discipline, timekeeping, payroll, and other employment practices.

55. Brister and the Day Rate Inspectors do not have the power to hire or fire any employees.

56. Brister's working relationship with UFS is similar UFS's relationship with its other Day Rate Inspectors.

57. UFS knew Brister and the Day Rate Inspectors worked more than 40 hours in a week.

58. UFS knew, or showed reckless disregard for, whether the Day Rate Inspectors were entitled to overtime under the FLSA.

59. Nonetheless, UFS failed to pay Brister and the Day Rate Inspectors overtime.

60. UFS willfully violated the FLSA.

## CAUSES OF ACTION
## FLSA VIOLATIONS

61. By failing to pay Brister and those similarly situated to him overtime at one-and-one-half times their regular rates, UFS violated the FLSA's overtime provisions.

62. UFS owes Brister and those similarly situated to him the difference between the rate actually paid and the proper overtime rate.

63. Because UFS knew, or showed reckless disregard for whether, its pay practices violated the FLSA, UFS owes these wages for at least the past three years.

64. UFS is liable to Brister and those similarly situated to him for an amount equal to all unpaid overtime wages as liquidated damages.

65. Brister and those similarly situated to him are entitled to recover all reasonable attorneys' fees and costs incurred in this action.

## COLLECTIVE ACTION ALLEGATIONS

66. Brister incorporates all previous paragraphs and alleges that the illegal pay practices UFS imposed on Brister were likewise imposed on the Putative Class Members.

67. Numerous individuals were victimized by this pattern, practice, and policy which is in willful violation of the FLSA.

68. Numerous other individuals who worked with Brister indicated they were paid in the same manner, performed similar work, and were not properly compensated for all hours worked as required by state and federal wage laws.

69. Based on his experiences and tenure with UFS, Brister is aware that UFS's illegal practices were imposed on the Day Rate Inspectors.

70. The Day Rate Inspectors were all not afforded the overtime compensation when they worked in excess of forty (40) hours per week.

71. UFS's failure to pay wages and overtime compensation at the rates required by state and/or federal law result from generally applicable, systematic policies, and practices which are not dependent on the personal circumstances of the Day Rate Inspectors.

72. Brister's experiences are therefore typical of the experiences of the Day Rate Inspectors.

73. The specific job titles or precise job locations of the Day Rate Inspectors do not prevent class or collective treatment.

74. Brister has no interests contrary to, or in conflict with, the Day Rate Inspectors. Like each Day Rate Inspector, Brister has an interest in obtaining the unpaid overtime wages owed to him under federal law.

75. A collective action, such as the instant one, is superior to other available means for fair and efficient adjudication of the lawsuit.

76. Absent this action, many Day Rate Inspectors likely will not obtain redress of their injuries and UFS will reap the unjust benefits of violating the FLSA and applicable state labor laws.

77. Furthermore, even if some of the Day Rate Inspectors could afford individual litigation against UFS, it would be unduly burdensome to the judicial system.

78. Concentrating the litigation in one forum will promote judicial economy and parity among the claims of individual members of the classes and provide for judicial consistency.

79. The questions of law and fact common to the Day Rate Inspectors predominate over any questions affecting solely the individual members. Among the common questions of law and fact are:

   a. Whether the Day Rate Inspectors' rights were violated as a result of UFS's day rate pay plan;

   b. Whether UFS's day rate pay plan was made in good faith;

   c. Whether UFS's decision to not pay time and a half for overtime to the Day Rate Inspectors was made in good faith;

   d. Whether UFS's violation of the FLSA was willful; and

   e. Whether UFS's illegal pay practices were applied uniformly across the nation to all Day Rate Inspectors.

80. Brister's claims are typical of the claims of the Day Rate Inspectors. Brister and the Day Rate Inspectors sustained damages arising out of UFS's illegal and uniform employment policy.

81. Brister knows of no difficulty that will be encountered in the management of this litigation that would preclude its ability to go forward as a collective or class action.

82. Although the issue of damages may be somewhat individual in character, there is no detraction from the common nucleus of liability facts. Therefore, this issue does not preclude collective treatment.

## JURY DEMAND

83. Brister demands a trial by jury

## PRAYER

84. WHEREFORE, Brister prays for judgment against UFS as follows:

 a. An Order designating this lawsuit as a collective action and permitting the issuance of a notice pursuant to 29 U.S.C. § 216(b) to all similarly situated individuals with instructions to permit them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. § 216(b);

 b. For an Order pursuant to Section 16(b) of the FLSA finding UFS liable for unpaid back wages due to Brister and the FLSA Class Members for liquidated damages equal in amount to their unpaid compensation;

 c. For an Order awarding Brister and the Day Rate Inspectors their reasonable attorneys' fees and expenses as provided by the FLSA;

 d. For an Order awarding attorneys' fees, costs and pre- and post-judgment interest; and

 e. For an Order granting such other and further relief as may be necessary and appropriate.

Respectfully submitted,

By: /s/ *Michael A. Josephson*
**Michael A. Josephson**
Texas Bar No. 24014780
**Andrew W. Dunlap**
Texas Bar No. 24078444
**Carl A. Fitz**
Texas Bar No. 24105863
**JOSEPHSON DUNLAP LLP**
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
713-352-1100 – Telephone
713-352-3300 – Facsimile
mjosephson@mybackwages.com
adunlap@mybackwages.com
cfitz@mybackwages.com

**AND**

**Richard J. (Rex) Burch**
Texas Bar No. 24001807
**BRUCKNER BURCH PLLC**
8 Greenway Plaza, Suite 1500
Houston, Texas 77046
713-877-8788 – Telephone
713-877-8065 – Facsimile
rburch@brucknerburch.com

**ATTORNEYS IN CHARGE FOR PLAINTIFF**